# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **ERIKA TANDY,** *Plaintiff* | § § § | |
| **v.** | § § | Case No. A-19-CV-575-RP |
| **MAD MAX CARS, LLC,** *Defendant* | § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE**

Before this Court are Defendant's Opposed Motion to Transfer Venue, filed on December 16, 2019 (Dkt. No. 21); Plaintiff's Response, filed on January 3, 2020 (Dkt. No 25); and Defendant's Reply, filed on January 10, 2020 (Dkt. No. 27). On April 13, 2020, the District Court referred the above motion and related filings to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b), Fed. R. Civ. P. 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.   Background

Plaintiff Erika Tandy is a Texas resident who resides in Round Rock, Texas. Defendant Mad Max Cars, LLC ("MMC"), a Washington state company with a principal place of business in Puyallup, Washington, is an automotive customization shop that designs and fabricates custom vehicles for customers throughout the United States.

In 2015, Tandy saw an ad posted by MMC on a Facebook group called "Wastelander Central." Dkt. No. 1-1 at ¶ 7. Tandy alleges that she met with the owners of MMC later that same year at the "Wasteland Weekend" auto event in California, where they discussed the possibility that MMC would build a custom car for her. *Id.* A few months later, the parties entered into an agreement that

MMC would custom build a Mach 1 Fastback car (the "Car") for Plaintiff in exchange for an initial deposit of $63,575 plus installments to be determined at each stage. Dkt. No. 21-3. MMC, from its headquarters in Washington, sent the Agreement to Tandy in Texas, where she signed it. Goodno Aff. Dkt. No. 21-1 at ¶ 5. Thereafter, Tandy obtained "the donor vehicle and sourced parts" for the Car, shipped those parts to MMC, and MMC began to work on building the Car at its headquarters in Washington. *Id.*

Tandy alleges that Defendant agreed "to build a custom car to Plaintiff's specifications with Plaintiff's continuous input, suggestions and changes." Dkt. No. 1-1 at ¶ 8. She contends that MMC initially told her that it would take approximately two years to complete all four phases of the build. However, by January 2019, some four years after MMC began to build the Car, Phase 2 of the build still had not been completed. On March 19, 2019, Tandy alleges, MMC emailed her to inform her that Phase 2 would not be finished until the end of May. She alleges that MMC moved the Car into storage in April 2019 and began charging her $75 per week, violating the parties' agreement. Tandy contends that MMC told her it would only release the Car to her if she "executed a broad and unreasonable release and non-disparagement agreement not required by the agreements between the parties." *Id.* at ¶ 14. MMC would not allow her agent to inspect the Car, she alleges, and "wrongfully recorded a $3,554 Claim of Lien on the Build." Dkt. No. 25 at 2. In December 2019, Tandy paid $4,000 to a commercial shipping carrier to ship the Car to her home in Round Rock, Texas. In total, Tandy alleges, she has paid MMC nearly $91,000. *Id.* at ¶ 10.

On May 29, 2019, Tandy filed this lawsuit against MMC in Williamson County District Court, alleging conversion and breach of contract. Tandy also seeks a declaratory judgment that she has no obligation to sign a release to receive her Car or to pay MMC storage fees. *See Tandy v. MMC*, Case No. 19-0728-C368 (368th Dist. Ct., Williamson County, Tex. May 29, 2019).

On June 4, 2019, MMC removed this case to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §1332. In its Motion to Transfer Venue, MMC argues, pursuant to 28 U.S.C. § 1404(a), that this suit should be transferred because "a trial will be much more convenient in the Western District of Washington and the interest of justice better served by transferring the case there." Dkt. No. 21 at 1. Tandy disagrees, arguing that MMC has not met its burden to show that this case should be transferred.

## II.   Standard of Review

Section § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision whether to transfer a case under § 1404(a) is a matter within the district court's sound discretion. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) ("*Volkswagen II*").

Because a plaintiff has the privilege of choosing the venue in which to file, the defendant bears the "significant burden" of showing "good cause" for transfer. *Id.* at 314 n.10. To show good cause, the defendant must show that the transferee venue is "clearly more convenient" than the plaintiff's chosen forum. *Id.* As the Fifth Circuit has explained:

> When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer.

*Volkswagen II*, 545 F.3d at 315 (quoting § 1404(a)).

The preliminary question under § 1404(a) is whether the action "might have been brought" in the destination venue. *Id.* at 312. After determining the suit could have been filed in the destination venue, the Court weighs the parties' private interests in convenience and the public interest in the fair administration of justice. *Id.* at 315. The private interest factors include:

1. the relative ease of access to sources of proof;
2. the availability of compulsory process to secure the attendance of witnesses;
3. the cost of attendance for willing witnesses; and
4. all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Id.* The public interest factors include:

1. the administrative difficulties flowing from court congestion;
2. the local interest in having localized interests decided at home;
3. the familiarity of the forum with the law that will govern the case; and
4. the avoidance of unnecessary problems of conflict of laws in the application of foreign law.

*Id.* These factors are not exhaustive or exclusive, and that none is dispositive. *Id.*

Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, the Court takes it into account nonetheless because it places a significant burden on the movant to show good cause for the transfer. *Id.* at 314 n.10. A moving defendant must demonstrate that the proposed venue is clearly more convenient that the original venue. By applying this heightened standard, the plaintiff's choice of forum is given appropriate deference. *Id.*

### III.   Analysis

**A. Preliminary Inquiry**

The preliminary inquiry in the § 1404(a) analysis is whether the lawsuit could have been brought in the division to which the movant seeks a transfer. *Volkswagen II*, 545 F.3d at 312. The venue statute provides, in relevant part, that venue is proper in "a judicial district in which any

defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).

It is undisputed that MMC's principal place of business is Puyallup, Washington, in the Western District of Washington. Accordingly, this lawsuit could have been brought in the Western District of Washington. The Court thus must weigh the parties' private interests in convenience and the public interest in the fair administration of justice. *Volkswagen II*, 545 F.3d at 312.

## B. Private Interest Factors

The Court first considers the private interest factors contested by the parties.

### 1. Relative Ease of Access to Sources of Proof

The private interest factor concerning the relative ease of access to proof is focused on the location of documentary and physical evidence. *See Volkswagen II*, 545 F.3d at 316. Regarding physical evidence, although MMC built the Car in Washington, it is now located in this district. As to documentary evidence, the parties' Agreement and relevant emails were sent back and forth between Washington and Texas. This evidence thus is equally available in either district. Accordingly, this factor is neutral.

### 2. Availability of Process to Secure the Attendance of Witnesses

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. "Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses." *GeoTag, Inc. v. Starbucks Corp.*, 2013 WL 890484, at *3 (E.D. Tex. Jan. 14, 2013).

A district court's subpoena power is governed by FED. R. CIV. P. 45. For purposes of § 1404(a), there are three important parts to Rule 45. First, a district court has subpoena power over witnesses who live or work within 100 miles of the courthouse. FED. R. CIV. P. 45(c)(1)(A). Second, a district

court has subpoena power over residents of the state in which the district court sits—a party or a party's officer who lives or works in the state can be compelled to attend trial, and non-party residents similarly can be compelled as long as their attendance would not result in "substantial expense." FED. R. CIV. P. 45(c)(1)(B)(i)–(ii). Third, a district court has nationwide subpoena power to compel a non-party witness's attendance at a deposition within 100 miles of where the witness lives or works. FED. R. CIV. P. 45(a)(2), 45(c)(1).

Tandy has identified two Texas-based non-party witnesses who will testify in this case: Jeffrey Tandy, her husband, and John Dinkle, a friend. Dkt. No. 15 at 2-3. Although MMC argues that "ten potential witnesses live in the Western District of Washington," it has identified only three non-party witnesses who reside there: John Booth, Dean Detweiler, and Mike Gipson. Dkt. No. 21 at 6-7. MMC contends that these three witnesses performed work on the Car but fails to mention that all were employed as contract workers for MMC. Dkt. No. 21-5; Goodno Aff., Dkt. No. 21-1 at ¶ 10. These witnesses thus are more akin to party witnesses. MMC also fails to state the substance of these witnesses' testimony. "A party seeking a transfer of venue must do more than make general allegations that key witnesses are unavailable or are inconveniently located. Rather, the moving party must identify specific witnesses and outline the substance of their testimony." *Bunnett & Co. v. Dores*, 2016 WL 247669, at *6 (W.D. Tex. Jan. 20, 2016); *see also Magana v. Toyota Motor Corp.*, 2010 WL 5108850, at *2 (N.D. Tex. Dec. 6, 2010) ("It is well established that the party seeking transfer must specify . . . clearly the key witnesses to be called and their location and must make a general statement of what their testimony will cover.") (quotation omitted). Because MMC identified only one more non-party witness than Tandy, this factor does not weigh in favor of transfer.

### 3. Costs of Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witness. This factor largely concerns the convenience to willing, non-party witnesses: "While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis." *LBS Innovations, LLC v. Apple Inc.*, 2020 WL 923887, at *5 (E.D. Tex. Feb. 26, 2020).

MMC argues that this factor clearly favors transfer because ten potential witnesses live within 100 miles of the Western District of Washington's courthouse, while only three witnesses live in the Western District of Texas. Seven of these witnesses, however, are MMC officers or employees. Courts generally give the convenience to employee witnesses little weight under this factor. *See Freehold Licensing, Inc. v. Aequitatem Capital Partners, LLC*, 2018 WL 5539929, at *7 (W.D. Tex. Oct. 29, 2018) ("If the Plaintiffs are referring to employee witnesses, then their convenience would be entitled to little weight."); *Ternium Int'l U.S.A. Corp. v. Consol. Sys., Inc.*, 2009 WL 464953, at *4 (N.D. Tex. Feb. 24, 2009) ("The convenience of witnesses who are employees of the party seeking transfer is entitled to less weight because that party will be able to compel their testimony at trial.").

MMC also identifies three witnesses who reside in California and argues that these witnesses would be inconvenienced more by travel to Texas than to Washington. The Court finds that these witnesses essentially would be equally inconvenienced if they are required to travel to either Washington or Texas because both venues will require air travel. As noted, Tandy's non-party witnesses reside in the Western District of Texas, and, therefore, they will be inconvenienced if the case is transferred to Washington. Accordingly, this factor weighs against transfer.

### 4. All other Practical Problems

The fourth private interest factor is "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen II*, 545 F.3d at 315. MMC has not identified any other practical problems that would arise that favor transferring this case to Washington. This factor therefore weighs against transfer.

In sum, MMC has failed to show that any of the private factors clearly weigh in favor of transferring the case to Washington.

## C. Public Factors

The only public factors at issue are the administrative difficulties flowing from court congestion and the interest in having local issues decided at home. *See* Dkt. No. 21 at 9-10.

### 1. Administrative Difficulties Flowing from Court Congestion

MMC argues that this case should be transferred because the Western District of Texas is ranked the 22nd busiest district court in the nation, while the Western District of Washington is ranked only 57th. Tandy points out that although this district has a busier docket than the Washington court, the average time between the filing and disposition of civil cases is shorter here. Accordingly, this factor does not favor transfer.

### 2. Local Interest in Having Localized Interests Decided at Home

MMC argues that this factor weighs in favor of transfer because "[t]he interest of a local business and its staff in protecting their reputations in their community when their work is called into question is an important local interest that should be decided at home." Dkt. No. 21 at 9-10. MMC also admits, however, that it is a "a unique local business that attracts customers from across the world, particularly from the movie industry." *Id.* at 9. Thus, MMC does not simply sell its services to local customers, but to customers located throughout the United States. Texas also has

8

an interest in litigating this case here because it involves a Texas customer who alleges that she was wronged by an out-of-state business. This factor does not favor transfer.

## IV. Conclusion

MMC had the burden to "clearly demonstrate" that transfer would serve the convenience of parties and witnesses, in the interest of justice. *Volkswagen II*, 545 F.3d at 315. MMC has not met its burden to show that venue is clearly more convenient in the Western District of Washington for the parties and witnesses. In general, "a transfer should not be made where the only practical effect is to shift inconvenience from the moving party to the non-moving party." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 726 (W.D. Tex. 2013) (citation omitted). Rather, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315. Accordingly, MMC's Motion to Transfer Venue should be denied.

## V. Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Defendant's Opposed Motion to Transfer Venue (Dkt. No. 21).

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## VI. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo

review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on April 16, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE